UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**REGINALD M. GREGERSON**,                              Civil Case No. 3:12-CV-01224-KI

              Plaintiff,

                               OPINION AND ORDER

              v.

**COMMISSIONER of Social Security,**

              Defendant.


      Alan Stuart Graf, P.C.
      316 Second Road
      Summertown, Tennessee  38483

            Attorney for Plaintiff

      S. Amanda Marshall
      United States Attorney
      District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

Jeffrey R. McClain
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Regi M. Gregerson brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner and remand for further proceedings.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

Page 2 - OPINION AND ORDER

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be determined to be disabled only if his

physical or mental impairments are of such severity that he is not only unable to do his previous

work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B).

      The Commissioner has established a five-step sequential evaluation process for

determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is

carried out by the Administrative Law Judge ("ALJ").  The claimant has the burden of proof on

the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520

and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful

activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise,

the ALJ proceeds to step two and determines whether the claimant has a medically severe

impairment or combination of impairments.  A severe impairment is one "which significantly

limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R.

§§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of

impairments, disability benefits are denied.

      If the impairment is severe, the ALJ proceeds to the third step to determine whether the

impairment is equivalent to one of a number of listed impairments that the Commissioner

acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d),

416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is

conclusively presumed to be disabled.  If the impairment is not one that is presumed to be

disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less than a preponderance. Id. (internal quotation omitted). The court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations. Id.

## THE ALJ'S DECISION

The ALJ found Gregerson had severe impairments of subdural hematoma status post resection, cognitive disorder NOS, adjustment disorder with mixed anxiety and depressed mood, and ongoing alcohol abuse. The ALJ also found that these impairments, either singly or in

combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  After reviewing the record, the ALJ concluded Gregerson had the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday.  Gregerson cannot crawl or climb ladders, ropes, and scaffolds; can stoop, kneel, crouch, and climb stairs occasionally; can balance frequently; can understand, remember, and carry out short, simple instructions consistent with entry-level work; should have no more than occasional public contact; and should not drive as a required function of the job.  Based on the vocational expert's testimony that Gregerson could work as a patcher, taper, or sorter, the ALJ found Gregerson was not disabled under the Act.

## FACTS

Gregerson alleges he became disabled on January 31, 2008 due to head trauma he suffered in 2002.  The injury required emergency surgery to remove a blood clot from his brain. Gregerson, who was 45 years old at the time of the ALJ's decision, has a high school education and years of work experience as a door assembler, forklift operator, lumber mill worker, and glass cutter.  At the time of the March 2011 hearing, Gregerson had lived at a rescue mission since August 2009; he previously abused alcohol but stopped drinking when he moved there. Gregerson sorts clothing at the mission for an hour or two a day, four days a week.

The brain injury caused several chronic problems.  Gregerson claims to have numbness in his lower left leg which causes him to limp; migraine headaches every few months that are incapacitating for one to two days; difficulty with memory, concentration and following multi-

step instructions; reduced hand-eye coordination causing shakiness when he attempts to pick up an object, and anxiety around people.

Because he had no funds and no insurance, the only medical treatment Gregerson received since 2002 are an emergency room visit for suicidal ideation in 2003 and two appointments at a community health clinic in March and April 2010. He takes ibuprofen for pain relief.

**DISCUSSION**

I.    Gregerson's Credibility

Gregerson contends the ALJ gave insufficient reasons for rejecting his subjective complaints.

The Commissioner argues many of Gregerson's claims are inconsistent with the medical record, his former employer's statement, his work history after the brain surgery, and his activities of daily living.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence

undermines the testimony." Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).

General findings are insufficient to support an adverse credibility determination, and the ALJ

must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based

on affirmative evidence thereof, he or she may only find an applicant not credible by making

specific findings as to credibility and stating clear and convincing reasons for each." Robbins v.

Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ listed several reasons for finding Gregerson's subjective symptom testimony to

be less than fully credible.

The ALJ found Gregerson's testimony about his concentration deficits after his head

injury inconsistent with Dr. Kirkendall's ultimate conclusion and the overall objective findings. I

discuss Dr. Kirkendall's opinion in more detail below, but I do not read his opinion as strong

support for Gregerson's ability to complete a full workday. This is not a clear and convincing

reason to discredit Gregerson.

The ALJ reasoned Gregerson's former employer's statement directly contradicted

Gregerson's assertion that the job ended "because he was unable to perform such tasks due to

concentration deficits." Tr. 17. Gregerson testified he was let go in 2008 because he could not

perform his job duties, he was told he was not fast enough, and he could only function for so long

and then would lose the ability. Gregerson also explained he could not concentrate like he used

to, but he did not directly tie this complaint to losing his last job in 2008. The former employer

stated that Gregerson had limited abilities, that he could not keep up, that he understood the task

but could not physically do it, and that co-workers had to do Gregerson's share of the work.

Page 7 - OPINION AND ORDER

I do not see any contradiction between Gregerson's testimony and his former employer's statement. Consistent with both the employer's and Gregerson's statements, it is possible for Gregerson to understand the task but lose focus at some point and consequently slow down. An employer would not always know if the slow down was caused by physical issues or concentration issues. Moreover, the ALJ did not correctly capture Gregerson's testimony by tying concentration deficits to the inability to perform work tasks. Thus, this reason is not supported by the record and is not a clear and convincing reason to discredit Gregerson.

The ALJ noted Dr. Brewster, an examining physician, found Gregerson had no hand-eye coordination difficulties but Gregerson testified his diminished hand-eye coordination limited his ability to pick up things because trying to do so made him shaky. The ALJ's reason is supported by Dr. Brewster's conclusion that Gregerson had no manipulative or visual limitations.

The ALJ discredited Gregerson in part because he maintained substantial gainful employment for six years after his 2002 head injury without significant mental problems being observed by his employer. The crux of this reason is that Gregerson earned over $6,000 in 2003 and more than $12,000 each year from 2004 through 2007 by working competitive jobs without any employer accommodations. Whatever issues Gregerson's employers noticed or not, he was able to maintain employment. This lead to Gregerson's attorney revising the alleged onset date of disability from December 31, 2002, as claimed by Gregerson in his applications, to January 31, 2008. In sum, the ALJ's reason is supported by the record and is clear and convincing.

The ALJ found Gregerson's reported daily activities implied a higher level of functioning than he claimed, even though the only change was his sobriety, which should have resulted in an

improvement.  The record shows Gregerson performs all of his self-care activities, does about an hour of housework a day without limitation, sorts clothes at the mission for up to two hours a day, watches television for eight hours a day and reads for four hours a day.  Before moving to the mission, Gregerson would perform yard work or other chores assigned by his former landlord in exchange for free accommodations in a small trailer.  The level of activity is sufficient to support the ALJ's reasoning.

Finally, the ALJ noted Gregerson claimed to Dr. Kirkendall that he could not make change for himself but testified he had no such problem.  Dr. Kirkendall does note in his opinion that Gregerson is not capable of making change for himself when he goes shopping.  Tr. 233.  The record supports the reason.

The fact the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean the ALJ's entire credibility assessment is improper.  If there is substantial evidence supporting the ALJ's conclusion on credibility and "the error does not negate the validity of the ALJ's ultimate [credibility] conclusion, the error is harmless." Carmickle v. Comm'r of Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation omitted).

I find the ALJ's errors are harmless.  He has given sufficient clear and convincing reasons, supported by the record, to discredit Gregerson's subjective symptom testimony.

II.     Dr. Kirkendall's Opinion

Because Gregerson had no medical insurance for quite some time, his medical treatment had been limited.  Dr. Kirkendall, an examining psychologist, provided the only evaluation in the record by either a treating or examining physician.  Gregerson argues the ALJ failed to give

Page 9 - OPINION AND ORDER

sufficient reasons to reject portions of Dr. Kirkendall's opinion and failed to recount the opinion accurately.  In particular, Gregerson contends the ability to perform simple tasks does not equate with the ability to sustain those tasks for long periods during a workday.

The Commissioner argues the ALJ did not err by crediting one aspect of Dr. Kirkendall's opinion–that Gregerson could perform simple, repetitive tasks–over the contrary aspect that Gregerson would have difficulty maintaining concentration and attention throughout the workday.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.

On February 20, 2009, Dr. Kirkendall found Gregerson functioned in the low average range of intelligence, at best.  He opined:

These findings suggest that Mr. Gregerson's attention span is barely adequate for simple tasks and that he may experience problems concentrating on a regular basis. . . . His immediate recall and short-term memory were sufficiently intact to complete all tasks asked of him in today's interview but he may well evidence short-term memory problems in his day-to-day life.

Tr. 235-36.

Based on Mr. Gregerson's presentation in today's interview it appears that he would have difficulty understanding and/or remembering anything beyond simple one-step instructions. It appears that he would have difficulty sustaining concentration and attention over the course of a normal work day even though his concentration and attention were adequate for all tasks asked of him in today's interview. As a result if Mr. Gregerson were assigned a simple activity that was repetitive in nature he probably could carry this out for an extended period of time but if he were asked to shift tasks throughout the day or engage in tasks that were complex in nature he would probably have difficulty in doing so.

Tr. 237.

Dr. Kirkendall also explained that Gregerson's significant brain injury appeared to cause some ongoing cognitive deficits, "but the precise nature of those deficits will need to be evaluated by way of a neuropsychological evaluation." Tr. 237.

A non-examining DDS psychologist, Dr. Dorothy Anderson, found Gregerson could understand, remember, and carry out very short, simple instructions, maintain attention for two hour periods, and complete a normal workday. Tr. 265. Dr. Anderson's opinion contradicts Dr. Kirkendall's opinion on Gregerson's ability to sustain concentration over a normal workday. Thus, the ALJ can discount Dr. Kirkendall's opinion by providing specific and legitimate reasons supported by substantial evidence in the record. Dr. Anderson's opinion alone, however, is insufficient to constitute substantial evidence to reject the opinion of an examining physician. Widmark, 454 F.3d at 1066 & n.2.

Page 11 - OPINION AND ORDER

In discrediting Dr. Kirkendall in part, the ALJ relied on Dr. Anderson's opinion because it addressed Gregerson's need for simple tasks and accommodated his reported anxiety by limiting public contact. A third-party report from Gregerson's former roommate, in addition to Gregerson's subjective complaints, provided evidentiary support for Dr. Anderson's restrictions.

The ALJ gave no weight to Dr. Kirkendall's concerns about Gregerson's ability to perform simple work. The ALJ reasoned: (1) Dr. Kirkendall failed to support his conclusion that Gregerson would have limited ability to sustain attention and concentration on simple tasks when Gregerson adequately performed simple tasks during the examination; (2) Dr. Kirkendall inconsistently stated later in the report that Gregerson could sustain simple, repetitive tasks; and (3) the former employer reported Gregerson had no difficulty understanding and following instructions.

The ALJ gave little weight to Dr. Kirkendall's conclusion that Gregerson reasonably could have memory problems on a day-to-day basis. The ALJ reasoned Gregerson did not demonstrate memory problems during the evaluation and his former employer was unaware of any such deficit.

I disagree with the ALJ's statement that Dr. Kirkendall failed to support his conclusion that Gregerson has limited ability to sustain attention. During the examination, Gregerson could spell "WORLD" forwards but reversed two letters when attempting to spell it backwards. Gregerson could only complete serial 3s by working very slowly and constantly repeating the instructions to himself throughout the task. These results do not demonstrate adequate performance of simple tasks. Moreover, I explained above my concerns about relying heavily on the former employer's statement.

Page 12 - OPINION AND ORDER

The alleged inconsistencies in Dr. Kirkendall's opinion were likely caused by the fact he believes the precise nature of Gregerson's cognitive deficits should be determined in a neuropsychological evaluation.  Dr. Kirkendall could see evidence of cognitive deficits, and he could listen to Gregerson's explanation of his difficulties, but Dr. Kirkendall was not engaged to perform a neuropsychological evaluation which would more completely explore Gregerson's abilities and limitations.  Thus, Dr. Kirkendall was left with a feeling that over a full workday, Gregerson's limitations would become more evident.  This resulted in an opinion which can be read in an inconsistent way.

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted).  The ALJ must supplement the record if there is ambiguous evidence or the ALJ finds the record is inadequate.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).

Based on these concerns, and the ALJ's failure to obtain a neuropsychological evaluation, I find the ALJ failed to give specific and legitimate reasons to reject part of Dr. Kirkendall's opinion.

III.   Vocational Issues

A.   Consistency with the Dictionary of Occupational Titles ("DOT")

In the opinion, the ALJ concluded Gregerson had the ability to understand, remember, and carry out short, simple instructions consistent with entry-level (SVP 1 or 2) work as defined in the DOT, and no more than occasional public contact.  Tr. 13.  The ALJ found Gregerson could work as a patcher, taper, or sorter.

Page 13 - OPINION AND ORDER

Gregerson argues the vocational expert's testimony is inconsistent with the DOT because the jobs of patcher and taper require reasoning level 2, which is greater than the mental functional capacity the ALJ found for Gregerson. Gregerson notes the vocational expert failed to explain the inconsistency.

An ALJ may not rely on a vocational expert's testimony regarding the requirements of a particular job without first asking if the testimony conflicts with the DOT. Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007). The procedural error is harmless, however, if there is no conflict or if the VE provides sufficient support for his conclusion to justify any potential conflicts. Id. at 1154 n.19.

The Commissioner claims there is no conflict between the ability to understand, remember, and carry out short, simple instructions and the DOT's reasoning level 2. She relies on the disconnect between the SSA's regulations, which have only two categories for comprehension, memory, and concentration ability, and the DOT's six reasoning levels, as explained in Meissl v. Barnhard, 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005):

> The Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1)(iii); see also 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00C(3) ("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one- or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking . . . apprehend the most abstruse classes of concepts" at level six). DOT at 1010–1011. To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity.

Page 14 - OPINION AND ORDER

According to the Commissioner, Gregerson's analysis applies the ability to understand and carry out detailed or complex instructions into reasoning levels 2 through 6. The Commissioner argues this would result in a claimant capable of understanding and carrying out detailed or complex instructions being equally capable of being a laundry folder (DOT #369.687-018), which requires reasoning level 2, or a theoretical physicist (DOT #023.067-010), which requires reasoning level 6.

Because I will be remanding this case, as explained below, I decline to rule on this legal issue. I ask the ALJ to address the issue with the vocational expert at the rehearing.

B.    Significant Numbers of Jobs

Gregerson agrees the job of sorter, which has a reasoning level 1, meets the ALJ's residual functional capacity. The vocational expert testified the sorter job had 10,000 positions in the national economy and 170 positions in Oregon.

Gregerson argues it would be unconscionable to expect a person with his limitations to find a job when only 170 are available in this state.

Again, because of the remand, I decline to rule on the legal issue of the number of jobs required to be considered significant. I do note, however, the Commissioner meets the burden if the number of jobs is significant *either* in the region in which the claimant lives *or* nationally. Beltran v. Astrue, 700 F.3d 386, 389 (9th Cir. 2012).

V.    Remedy

The court has the discretion to remand the case for additional evidence and findings or to award benefits. McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally

sufficient reasons for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited.  Id.

Here, a remand is required to gather enough evidence to address Gregerson's cognitive deficits completely.  I ask the ALJ to obtain a neuropsychological evaluation before the rehearing.

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____29th_____ day of May, 2013.


   /s/ Garr M. King_____
Garr M. King
United States District Judge